# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARGARET VERREES, M.D.,** | **1:16-cv-01392-LJO-SKO** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 55, 56, and 57)** |
| **v.** | |
| **JAMES DAVIS, M.D.,** *et al.,* | |
| **Defendants.** | |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as

1

visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

This matter concerns pro se Plaintiff Margaret Verrees's complaint, which alleges RICO, Sherman Act, and various state law claims, filed against Defendants James Davis, Scott Wells, Joyce Fields-Keene, the University of California Board of Regents (the "Board"), University of California San Francisco-Fresno ("UCSFF"), Community Medical Centers ("CMC"), Community Regional Medical Center ("CRMC"), Central California Faculty Medical Group ("CCFMG"), University Neurosurgery Associates ("UNA"), Santé/Advantek Benefits Administrators ("Santé"), and Joan Vorris. Three groups of Defendants filed separate motions to dismiss or strike portions of Plaintiff's First Amended Complaint ("FAC"), or in the alternative to require a more definite statement. For the following reasons, Plaintiff's FAC is DISMISSED.

## III. <u>PROCEDURAL HISTORY</u>

On September 20, 2016, Plaintiff filed her 74 page initial complaint. ECF No. 1. Plaintiff filed a 92 page FAC on December 19, 2016. ECF No. 16. Plaintiff sought leave to file a Second Amended Complaint ("SAC") on August 16, 2017. ECF No. 25. Plaintiff's request was denied by Magistrate Judge Oberto because the proposed 2,185 page SAC failed to comply with the Federal Rule of Civil Procedure ("Rule") 8(a) requirement that a pleading include a "short and plain statement of the claim." ECF No. 26. Plaintiff was given the option of either filing a SAC that complied with Rule 8(a) or proceeding on her FAC. *Id*. Plaintiff filed a 290 page SAC on September 11, 2017, ECF No. 28, which was stricken for failure to comply with Rule 8(a) on September 14, 2017. ECF No. 31. Plaintiff was given another opportunity to refile, and Magistrate Judge Oberto warned Plaintiff that if she failed to file a SAC that complied with the Federal Rules of Civil Procedure, the action would proceed on Plaintiff's FAC. ECF No. 31. Plaintiff did not file a new SAC, and on October 11, 2017, Magistrate Judge Oberto ordered the action to proceed on the FAC.

On December 11, 2017, three groups of Defendants filed motions to dismiss Plaintiff's FAC: Joyce Fields-Keene, CCFMG, and UNA ("CCFMG Defendants"), ECF No. 55; James Davis and the Board ("Board Defendants"), ECF No. 56; and Scott Wells, CMC, CRMC, and Santé ("CMC Defendants")[1], ECF No. 57. The parties entered a stipulation extending Plaintiff's time to respond to the motions, ECF No. 61, which the Court approved, ECF No. 62, and on January 30, 2018, Plaintiff filed an 84 page opposition to the three motions. ECF No. 65. Without seeking leave of the Court or entering a stipulation agreed to by all parties, Plaintiff filed a 45 page supplement to her opposition on February 20, 2018. ECF No. 68. Each group of Defendants filed separate replies on February 27, 2018. ECF Nos. 69, 70, 71. Pursuant to Local Rule 230(g), the Court determined that the matter was suitable for decision on the papers and without further argument. ECF No. 72.

On March 19, 2018, Plaintiff filed a 51 page reply without leave of the Court. ECF No. 73. The Board Defendants filed an objection and request to strike or not consider the reply on March 23, 2018. ECF No. 74. Plaintiff filed a response to Board Defendants' objection on April 13, 2018. ECF No. 76.

## IV. <u>FACTUAL BACKGROUND</u>

Plaintiff's FAC and her opposition are excessively long and contain a great deal of irrelevant information. It is often not possible to discern the dates on which events are alleged to have occurred, or which Defendants are alleged to have been involved with those events. While the Court is mindful of its obligation to construe pro se filings liberally, the Court cannot and will not expend its resources in deciphering Plaintiff's unnecessarily convoluted pleadings. The Court believes that the following facts accurately reflect those alleged in Plaintiff's FAC. These facts are accepted as true only for the purpose of this motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Plaintiff, a physician and neurosurgeon, was hired by UCSF, CRMC, and CCFMG in December

---

[1] The CMC Defendants assert that CRMC, CMC, and Santé/Advantek Benefits Administrator are not separate legal entities. ECF No. 57 at 2 n. 1, 2. CRMC and CMC are business aliases of Fresno Community Hospital and Medical Center. *Id*. Santé Health System, Inc. pursues a line of business under the name Advantek Benefits Administrators. *Id*.

of 2008, joining a neurosurgery group consisting of four neurosurgeons. ECF No. 16 at ¶¶ 139-40. Plaintiff believed that she had been hired to establish a neurosurgical tumor program in Fresno. *Id*. at ¶ 295. The position also included an academic appointment at UCSF. *Id*. at ¶ 131. Plaintiff attempted to introduce methods she had found effective in her prior practice, but received pushback from a "longtime neurosurgeon" and Dr. Davis. *Id*. at ¶¶ 143-292. Plaintiff also observed other physicians acting in unprofessional, aggressive, and intimidating manners, and displaying a lack of regard for patients. *Id*. In March or April of 2011, Plaintiff began treating a minor who had experienced an extremely severe spinal injury known as an internal decapitation. *Id*. at ¶ 297. Plaintiff and Dr. Davis disagreed about the appropriate course of treatment, with Plaintiff ultimately following her proposed course of surgical intervention. *Id*. at ¶ 299. The minor eventually recovered. *Id*. at ¶ 298.

Dr. Davis subsequently lodged complaints against Plaintiff with an ad hoc review group at CCFMG. *Id*. at ¶ 300. Dr. Davis attempted to pressure a nurse into providing false statements by accusing the nurse of practicing medicine without a license and implying that the nurse would lose her job and her nursing license. *Id*. at ¶ 302. The nurse subsequently made a false report that Plaintiff abandoned a patient in the operating room. *Id*. at ¶ 303. The ad hoc committee ultimately concluded that Plaintiff's conduct constituted "Normal Doctor Functioning." *Id*. at 301. CCFMG bought out Plaintiff's contract, and her employment ended on May 16, 2011. *Id*. at ¶ 305. Plaintiff's academic appointment at UCSF was also terminated. *Id*. at ¶ 309.

Later in 2011, Dr. Davis brought his complaints against Plaintiff to the UCSF/CRMC Medical Executive Committee, which upheld the original charges. *Id*. at ¶ 308. The charges were resolved in late 2014. *Id*. at ¶ 325. Dr. Davis restricted Plaintiff's medical staff privileges at UCSF/CRMC and placed her under a proctorship program. *Id*. at ¶ 310. Both actions were taken with the intention of "destroying Plaintiff's reputation, career, practice, and life." *Id*. at ¶ 311.

Plaintiff, now working an independent private practice neurosurgeon, sought designation as an "Approved Provider" from Santé. *Id*. at ¶ 312. Mr. Wells, the CEO of Santé, refused to credential

Plaintiff as an approved provider because the Central Valley area had enough neurosurgeons, despite there being no neurosurgeons specializing in tumor treatment in the area at that time. *Id*. at ¶ 313-14. Ms. Fields-Keene had been able to obtain a designation of Approved Provider for Plaintiff in 2008. *Id*. at ¶ 315. At some point, Plaintiff was approved by Santé on a case by case basis for "over 18 months . . . until she ended her affiliation with St. Agnes Medical Center on September 30, 2012." *Id*. at ¶ 325. After the affiliation ended, Plaintiff was not recognized as an approved provider by Santé. *Id*. at ¶ 325.

As an independent neurosurgeon, Plaintiff attempted to follow-up with the patients she had treated at CCFMG and UCSF/CRMC. *Id*. at ¶ 317. The trauma unit at CRMC refused to make follow-up appointments for at least one patient. *Id*. at ¶ 318. Additionally, UCSF/CRMC refused to tell patients where Plaintiff had gone to practice, and claimed that the patients belonged to CRMC and Santé. *Id*. at ¶ 319. UCSF/CRMC staff was ordered not to tell inquiring patients how to reach Plaintiff, and informed them that Plaintiff was on an "extended vacation" and would not be returning to CRMC. *Id*. at ¶ 320. Dr. Davis refused to allow Plaintiff to assist another physician in a surgery, and restricted all CCFMG surgeons from participating in patient care with or acting as proctor for Plaintiff, causing Plaintiff to lose her staff privileges. *Id*. at ¶ 322. Dr. Davis also refused to transfer a patient to another medical facility where Plaintiff could provide care. *Id*. at ¶ 323. Plaintiff was told by a representative of Dr. Davis that if she did not leave the medical center and stop trying to inform the CRMC Medical Executive Committee about fraud, Dr. Davis would withhold care from her patient. *Id*. at ¶ 324.

## V. **THE PARTIES' POSITIONS**

The CCFMG Defendants contend that Plaintiff's FAC should be dismissed because it fails to comply with the Rule 8(a) requirement that a pleading be "a short and plain statement of the claim." ECF No. 55-1 at 7. They argue that dismissal should be with prejudice because Magistrate Judge Oberto warned Plaintiff that her filings did not comply with Rule 8 and because the FAC is suffused with irrelevant history and narrative, contains claims that Plaintiff may or may not intend to actually pursue, and is vague as to which facts support which claims and which causes of action are alleged against each

Defendant. *Id.* at 8. Additionally, the CCFMG Defendants argue that Plaintiff's RICO and anti-trust claims are time-barred because they were not filed within the four year statute of limitations that applies to each legal theory. *Id.* at 9-11. The CCFMG Defendants also contend that Plaintiff's anti-trust causes of action must fail as the injuries Plaintiff alleges are not sufficient to state such a claim, and Plaintiff lacks standing to seek relief for injuries to others. *Id.* at 11-12. If Plaintiff has failed to state either a RICO or anti-trust claim, and no other claims under federal law remain in the FAC, the CCFMG Defendants argue, Plaintiff's remaining state law claims should also be dismissed. *Id.* at 12. In the alternative, CCFMG Defendants request that the Court strike significant portions of the FAC pursuant to Rule 12(f) as containing "redundant, immaterial, impertinent, or scandalous matter." *Id.* at 12-14. The CCFMG Defendants also move for a more definite statement under Rule 12(e). *Id.* at 14-15.

The Board Defendants argue that the FAC should be dismissed for failure to comply with Rule 8, for the same reasons as the CCFMG Defendants. ECF No. 56-1 at 9-10. The Board Defendants also assert that they are entitled to Eleventh Amendment immunity as to Plaintiff's RICO causes of action. *Id.* at 11-13. Dr. Davis argues that qualified immunity bars Plaintiff's RICO claim against him. *Id.* at 13. Even if the asserted immunities did not bar Plaintiff's RICO claims, the Board Defendants argue, Plaintiff's FAC fails to allege the existence of a RICO enterprise or the commission of predicate acts. *Id.* at 14-15. The Board argues that a government entity cannot form the intent required to commit a criminal act as required for a RICO claim. *Id.* at 13. The Board Defendants contend that the Eleventh Amendment also bars Plaintiff's anti-trust claims against the Board. *Id.* at 16-17. They argue that Plaintiff has not alleged a contract, combination, or conspiracy by which the Board Defendants intended to harm or restrain trade, and has therefore not stated a claim under § 1 of the Sherman Act. *Id.* at 17-18. The Board Defendants similarly argue that Plaintiff has not alleged that they have engaged in any monopolistic behavior as required to state a claim under § 2 of the Sherman Act. *Id.* at 18. Like the CCFMG Defendants, the Board Defendants argue that Plaintiff's state law claims should be dismissed, *Id.* at 18-21, and in the alternative move for a more definitive statement. *Id.* at 21-22.

Finally, the CMC Defendants also argue that Plaintiff's FAC should be dismissed for failure to meet the Rule 8 standard. ECF No. 57 at 9-10. Along with the CCFMG Defendants, the CMC Defendants argue that the statutes of limitations bar Plaintiff's RICO and anti-trust claims. *Id*. at 19. The CMC Defendants assert that Plaintiff failed to explicitly allege that CMC and Santé committed a RICO violation, and that Plaintiff did not allege any pattern of racketeering activity. *Id*. at 12-13. The CMC Defendants argue that Plaintiff has not pled an injury in fact that she suffered as a result of the alleged anti-trust violations, and therefore lacks standing. *Id*. at 13. Even if Plaintiff had standing to bring an anti-trust claim, the CMC Defendants contend that she has not alleged that they entered into any contract, combination, or conspiracy intended to restrain trade and that Plaintiff has not pled facts showing that Mr. Wells has or has attempted to acquire monopoly power, how denial of Plaintiff's approved provider status contributed to the alleged monopolistic power, or that Santé and CMC took any actions to willfully acquire or maintain monopoly power. *Id*. at 14-15. The CMC Defendants also argue that Plaintiff's state law claims should be dismissed. *Id*. at 16. In the alternative, they move for a more definite statement and to strike immaterial and scandalous portions of the FAC. *Id*. at 16-17.

More than half of Plaintiff's 84 page opposition consists of narrative and new factual allegations that were not pled in her FAC. *See* ECF No. 65. Facts newly alleged in response to a motion to dismiss do not bear on the merits of that motion, and "a court *may not* look beyond the complaint to a plaintiff's moving papers" in ruling on a Rule 12(b)(6) motion. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (italics in original). The Court will consider the newly alleged facts only in determining whether Plaintiff is entitled to leave to amend. *See Andasola v. Capital One Bank NA*, No. CV 12-02467-PHX-JAT, 2013 WL 1149663, at *4 (D. Ariz. Mar. 19, 2013). The arguments advanced by Plaintiff in her response are described below.

Plaintiff argues that she properly alleged a RICO enterprise, consisting of Defendants, which has the common purpose of maintaining a regional enterprise dominating healthcare in the Central Valley. ECF No. 65 at 47-48. She restates, in more detail than in her FAC, her allegation that Dr. Davis extorted

false testimony from a nurse, and adds that, as a result of the extortion, Plaintiff was placed under proctorship at CMC. *Id*. at 48-56. Plaintiff newly alleges additional racketeering activities, namely the attempted murder of hospital patients, elder abuse, abusing or endangering the health of a child, felonious assault of hospitalized patients, "conspiracy against rights," and stalking. *Id*. at 57-68, 70-74. Plaintiff also alleges additional incidents of witness intimidation, blackmail, obstruction of justice by witness tampering, intimidation, threats, persuasion, deception, and harassment, and conspiracy to obstruct justice. *Id*. at 68-70. Plaintiff alleges additional incidents of mail and wire fraud, as well as False Claims Act violations and conspiracy to violate the False Claims Act. *Id*. at 74-82. Finally, Plaintiff argues that she was injured in her career and business, and forced to incur attorney's fees and legal costs, as the primary victim or target of Defendants' RICO enterprise. *Id*. at 83-84.

## VI. <u>ANALYSIS</u>

### A.    <u>Plaintiff's Supplemental Opposition and Reply</u>

On February 20, 2018, Plaintiff filed a supplemental opposition. ECF No. 68. All Defendants objected to the supplemental opposition. ECF Nos. 69 at 2; 70 at 2 n 1; 71 at 2-3. On March 19, 2018, Plaintiff filed a reply brief, to which the Board Defendants objected. ECF Nos. 73, 76. Plaintiff filed a response to the Board Defendants' objection on April 13, 2017. ECF No. 76. The Local Rules for this Court provide only for an opposition and reply to be filed in response to a motion. Local Rule 230. Neither the Local Rules not the Federal Rules of Civil Procedure permit supplemental oppositions or additional replies as a matter of right. The Court may request additional briefing or grant leave upon the request of a party to file an additional reply when a valid reason for such additional briefing exists, such as when a movant raises new arguments in a reply brief. *See Hill v. England*, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D.Ga. 2005)). Plaintiff did not seek leave to file the supplemental oppositions or additional reply, and the Court did not request either filing. Plaintiff, after receiving one extension to file her opposition, sought and was denied a second extension. ECF Nos. 62, 66. Her supplemental

opposition was filed in violation of the briefing schedule set forth by the Court. Plaintiff asserts in her supplemental opposition that tending to the needs of a severely brain-injured sibling prevented her from timely filing a complete opposition. ECF No. 68 at 1-2. While the genuine health emergency of a family member may constitute grounds for an extension of time to file, leave to extend time for filing should be sought before a deadline passes, not three weeks after. Local Rule 144(d). There is also no indication that Plaintiff contacted opposing counsel to request a stipulated extension. *See* Local Rule 144(a), (c). For the foregoing reasons, Defendants' motion to strike Plaintiff's Supplemental Opposition is GRANTED.

As to Plaintiff's reply brief, Defendants raise no new arguments in their reply briefs that necessitate additional briefing. *See* ECF Nos. 69-71. Moreover, on February 28, 2018, before Plaintiff filed her additional reply, the Court deemed the motion suitable for decision on the papers submitted pursuant to Local Rule 230(g), and took the case under consideration. ECF No. 72. Plaintiff's reply was not just an unpermitted filing under the Local Rules, it was also filed after the matter was deemed submitted for decision. Therefore, for the foregoing reasons, the Board Defendants' motion to strike Plaintiff's reply is also GRANTED. [2]

**B.** **Federal Rule of Civil Procedure 8**

Rule 8 requires that any pleading stating a claim for relief to contain, among other element, "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (citing *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981)). On a Rule 8 motion to dismiss, the movant bears the burden of establishing that the Rule's requirements have not been met. *See Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1165 (C.D. Cal.

---

[2] Plaintiff is warned further that filing over-length briefs will not be tolerated in the future. Plaintiff must familiarize herself with the Local Rules and this Court's Standing Order, ECF No. 3-1. Filings that do not comply with the page limits set forth therein will be stricken.

2002).

The Court finds that Plaintiff's FAC is overlong, convoluted, and contains a great deal of irrelevant information. It is not the "short and plain statement of the claim" required by Rule 8. Requiring Defendants to litigate this case based on a FAC that does not clearly set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery" would be unfair. *McHenry*, 84 F.3d at 1177-78. However, dismissal with prejudice is not warranted at this time. While Magistrate Judge Oberto struck Plaintiff's SAC, and warned Plaintiff that her filings did not comply with the Federal Rules of Civil Procedure, ECF Nos. 26, 31, Judge Oberto permitted Plaintiff to proceed on her FAC. She did not warn Plaintiff that her FAC also did not comply with Rule 8. Consequently, Plaintiff has not received fair notice that her FAC is not in compliance with the Federal Rules of Civil Procedure. Taking into account the general rule that dismissal without leave to amend is disfavored unless it is apparent that amendment cannot cure the deficiencies in a complaint, *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), Plaintiff's FAC is DISMISSED WITH LEAVE TO AMEND. In the interests of efficiency and to provide Plaintiff with notice of the substantive defects in her complaint, the Court will address the additional arguments for dismissal raised by Defendants.

**C.      Standard of Decision under Rule 12(b)(6)**

A motion to dismiss under ("Rule") 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To overcome a Rule 12(b)(6) challenge, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

When a court grants a motion to dismiss, it must also decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, "the consideration of prejudice to the opposing party . . . carries the greatest weight." *Eminence Captial, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper unless it is clear that "the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

**D.** **Eleventh Amendment Immunity**

The Board Defendants argue that, as an arm of the state of California, the Board is entitled to Eleventh Amendment immunity from Plaintiff's RICO and Sherman Act claims. ECF No. 56-1 at 11, 15-16. They also argue that Dr. Davis is entitled to Eleventh Amendment immunity as to claims brought against him in his official capacity. *Id.*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has recognized that this language "bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987). Accordingly, states may assert the Eleventh Amendment as an affirmative defense when they are being sued in federal courts. *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir.1993). Even if the state is not named as a defendant, "when the action is in essence for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity." *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464 (1945). Accordingly, a state agency which functions as an arm of the state may invoke Eleventh Amendment immunity. There are three exceptions to the general rule of Eleventh Amendment immunity:

> First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when the suit seeks prospective injunctive relief.

*Douglas v. California Dept. of Youth Auth.*, 271 F.3d 812, 817 (9th Cir.2001) (internal citations, ellipsis, and quotation marks omitted).

"The first question under the Eleventh Amendment is whether [the entity sued] was an arm of the state." *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir. 1982). As to the Board, that question has

been conclusively answered in the affirmative. *Id.* at 1350 ("[T]h University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment."). Therefore, unless one of the aforementioned exceptions applies, the Board is entitled to immunity under the Eleventh Amendment.

The *Ex parte Young* doctrine does not apply here, as Plaintiff is not seeking prospective injunctive relief against a state official. *Ex parte Young*, 209 U.S. 123 (1908). Plaintiff has not argued that the State of California waived its Eleventh Amendment immunity as to the Board or the specific RICO claims Plaintiff is bringing here, or that the RICO statute "abrogates"[3] Eleventh Amendment immunity for the purpose of private lawsuits, and the Court is not aware of any such waiver or abrogation. Similarly, Plaintiff has not pointed to, and the Court is not aware of, any authority for the proposition that California has waived its immunity for the purposes of claims brought under the Sherman Act, or for the proposition that Congress specifically abrogated such immunity. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 874 (9th Cir. 1987). Accordingly, the Court finds that the Board is entitled to Eleventh Amendment immunity as to Plaintiff's RICO and Sherman Act claims, and the Board is DISMISSED from this case.

As to Dr. Davis, it is not apparent from the face of the complaint or the motions to dismiss that Dr. Davis is a public official entitled to share in the state's Eleventh Amendment immunity. Plaintiff alleges that Dr. Davis "is a medical doctor and is the Chair of the Surgery Department at Community Regional Medical Center" and "is also Chief of the Trauma Unit." ECF No. 16 at ¶ 101 (capitalization altered). Plaintiff further alleges that Community Regional Medical Center is "a private entity." *Id.* at ¶ 109. The motion to dismiss filed by the Board and Dr. Davis does not explain the nature, if any, of Dr. Davis's relationship with the State of California. The motion merely observes that Plaintiff has alleged

---

[3] "Abrogate" is a legal term of art that means to abolish, annul, or repeal. ABROGATE, *Black's Law Dictionary* (10th ed. 2014).

that "Dr. Davis was at all time acting within the course and scope of his employment." [4] *See* ECF No.

56-1 at 13. In Plaintiff's opposition, she describes Dr. Davis at one point as "a UCSF-F Professor,

member of the CRMC medical staff, and physician within the CCFMG practice" ECF No. 65 at 48, but

does not clarify whether Dr. Davis was acting as an official of the University of California or as a

member of a private practice, or both, when engaging in the alleged racketeering or anti-trust activities.

Accordingly, the Court cannot find that Dr. Davis is entitled to Eleventh Amendment Immunity.

**E.**     **Qualified Immunity**

Dr. Davis asserts that he is entitled to qualified immunity from Plaintiff's RICO claims. ECF No.

56-1 at 13. Plaintiff contends that qualified immunity does not apply because Dr. Davis knowingly

violated the law. ECF No. 73 at 12.

Qualified immunity may be asserted as a defense to a private RICO claim. *Willis v. Mullins*, No.

CIV-F-04-6542 AWI LJO, 2006 WL 2792859, at *4 (E.D. Cal. Sept. 28, 2006) (citing *Gonzalez v. Lee

Cnty. Hous. Auth.*, 161 F.3d 1290, 1300 (11th Cir. 1998) and *Cullinan v. Abramson*, 128 F.3d 301, 312

(6th Cir. 1997)). Government officials enjoy qualified immunity from civil damages unless their conduct

violates "clearly established statutory or constitutional rights of which a reasonable person would have

known." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982)); *see also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

As the Court explained *supra*, the papers filed at this point in the proceedings do not permit the

conclusion that Dr. Davis is a state official. Since the FAC alleges only that Dr. Davis is employed by

CRMC, a private organization, Defendants have not offered any additional information regarding Dr.

Davis's connection to a government entity, and Plaintiff's opposition creates at best ambiguity as to the

capacity in which UCSF employed Dr. Davis. Therefore, the Court cannot find at this time that Dr.

---

[4] The Board and Dr. Davis provide a citation to the portions of the FAC which they purport contain this allegation. The cited paragraphs, ECF No. 16 at ¶¶ 300, 308, do not contain any specific allegation that Dr. Davis was acting in the scope of his employment at any point. Even if those paragraphs contained such an allegation, that allegation alone would not be a sufficient basis on which to find that Dr. Davis is entitled to qualified immunity.

Davis is entitled to qualified immunity.

**F.    Plaintiff's RICO Claims**

Plaintiff alleges that Defendants Davis, Wells, Fields-Keene, and Voris acted in concert to deprive Plaintiff of future employment, and in violation of 18 U.S.C. § 1962 (b)-(d), by making false claims against her with the Medical Board of California, defaming Plaintiff, attempting to intimidate other doctors and facilities into refusing to associate with Plaintiff, and suborning perjury in pursuit of the false claims against Plaintiff. ECF No. 16 at ¶ 328. Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Section 1962(c) also makes it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Further, § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]."

The RICO Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability. 18 U.S.C. §§ 1961-1968. "In order to state a claim under § 1962(b), a plaintiff must allege that '(1) the defendant's activity led to its control or acquisition over a RICO enterprise, and (2) an injury to plaintiff resulting from defendant's control or acquisition of an RICO enterprise.'" *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (quoting *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1068 (C.D. Cal. 2000)), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc). *See also Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994) ("The 'enterprise' referred to in [Section 1962(b)] is thus something acquired through the use of illegal activities or by money obtained from illegal activities."). A plaintiff must also allege proximate causation under § 1962(b) by alleging an "'injury from the defendant's acquisition or control of an interest in a RICO enterprise' separate from an injury flowing from the

racketeering activity." *In re Toyota Motor Corp*, 785 F. Supp. 2d 883, 921, (C.D. Cal. 2011) (quoting *U.S. Concord, Inc. v. Harris Graphics Corp*, 757 F. Supp. 1053, 1060 (N.D. Cal. 1991)). That is, there must be an injury alleged that is "separate and distinct from the injury flowing from the predicate acts." *Toyota*, 785 F. Supp. 2d at 921.

To allege a valid RICO claim under § 1962(c), a plaintiff must allege that defendants engaged in, or conspired to engage in: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *See Sigmond v. Brown*, 828 F.2d 8, 8 (9th Cir. 1987). Additionally, a plaintiff must have standing to bring the claim, which the plaintiff must show by alleging that he or she "has been injured in [his or her] business or property by the conduct constituting the violation." *Sedim, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The injury must flow from the commission of "predicate acts sufficiently related to constitute a pattern." *Id*. Additionally, in this Circuit, the injury must be "to a specific business or property interest–a categorical inquiry typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005). "Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013).

Finally, to state a claim for a violation of § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The acts that serve as predicate offenses are listed in the statute. 18 U.S.C. § 1961(1). "It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774-75 (9th Cir. 2002). "Although a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand." *Ochoa v. Hous. Auth. of City Los Angeles*, 47 F. App'x 484, 487 (9th Cir. 2002).

An act of racketeering activity, or predicate act, is any one of the acts listed in 18 U.S.C. § 1961(1). "A pattern of racketeering activity consists of at least two acts of racketeering activity." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987) (quotation marks omitted). The two acts must take place within ten years of each other, 18 U.S.C. § 1961(5), and to constitute a pattern a plaintiff must show "that the racketeering practices are related, and that they amount to or pose a threat of continued criminal activity," and are not merely "sporadic activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Racketeering predicates are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc.*, 492 U.S. at 240). RICO claims, whether alleged under §1961(b), (c), or (d), are subject to a four year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). The Ninth Circuit follows an "injury discovery" rule for determining when a RICO claim accrues and the statute of limitations begins to run. *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996). Under the "injury discovery" rule, the statute of limitations "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp*, 828 F.2d 211. 220 (4th Cir. 1987). "[A] new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510.

The FAC lists four specific predicate acts: (1) the dissemination of letters falsely stating that Plaintiff was on an extended vacation and would not return to CRMC, constituting mail fraud; (2) intimidating and threatening a nurse into make false statements to the ad hoc committee and the California Medical Board, constituting obstruction of justice and subornation of perjury; (3) extortion, based on the same facts; and (4) violating the Hobbs Act by creating an economic threat, based on the same facts. ECF No. 16 at ¶ 334. Plaintiff's allegations as to what specific conduct constitutes the predicate acts required to show a pattern of racketeering activity are vague as to the dates, parties, and

details of the conduct alleged. Plaintiff incorporates by reference almost the entirety of her 96 page FAC into the allegations, making it exceedingly difficult to determine the specific factual allegations that constitute predicate acts. The Court is not required to (and will not) expend judicial resources in parsing Plaintiff's complaint. To the extent the Court has been able to do so, it makes the following rulings.

The four year statute of limitations which applies to RICO claims serves to bar much of the activity alleged in Plaintiff's FAC. While it is not clear which events Plaintiff intended to allege as predicate acts, those events which fall outside of the statute of limitations do not constitute predicate acts. Of the specific activities alleged to constitute predicate acts, the letters falsely claiming that Plaintiff was on an extended vacation were sent on June 2, 2011. ECF No. 16, Ex. A. This case was filed on September 20, 2016, over a year after the statute of limitations had run as to the letters. Therefore, those letters do not constitute a predicate act for the purposes of Plaintiff's RICO claim.

As to the remaining three predicate acts, Plaintiff has not alleged any specific facts demonstrating how she was harmed in her business or property by Dr. Davis' alleged subornation of perjury or obstruction of justice. It is not apparent that, for example, Dr. Davis actually compelled any witness to provide false testimony under oath and that such testimony contributed to any outcome in a legal or administrative proceeding that was adverse to Plaintiff. In order to sustain a civil RICO claim, it is essential that the harm alleged be proximately caused by the racketeering injury. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169-70 (9th Cir. 2002) ("[P]laintiffs who have suffered 'passed-on' injury–that is, injury derived from a third party's direct injury–lack statutory standing."). Where no specific racketeering injury is alleged, a RICO claim cannot survive.[5]

---

[5] Similarly, Plaintiff asserts that Defendants' "pattern of activities . . . continuing to this day, resulted in multiple patients being abandoned at times, failing to timely obtain medical treatment, and having treatment withheld from them in order to retain 'market share' of patients and concomitantly force Plaintiff out of practice in the local area." ECF No. at ¶ 333. Plaintiff cannot assert harms to third parties for the purposes of establishing her own standing to bring a RICO claim.

Plaintiff's FAC also does not plead facts establishing a pattern of racketeering activity. Apart from the allegedly fraudulent mailings, all three predicate acts identified by Plaintiff arose out of the same event, that is, alleged threats by Dr. Davis against a nurse. ECF No. 16 at 87. A single event cannot constitute the pattern of racketeering activity required to state a RICO claim, even if the actions taken can be described under several different legal theories, when the predicate acts are not "indicative of a threat of continuing activity." *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (allegations of the fraudulent diversion of a single shipment of goods, while involving two or more predicate acts, did not establish a threat of continuing activity). As alleged in the FAC, Dr. Davis's actions appear to have completed the criminal episode, and do not constitute evidence of a threat of continuing criminal activity.

Plaintiff's opposition, supplemental opposition, and reply to the motions to dismiss contain new allegations of fact in addition to those in her FAC. While many of these allegations have no apparent relevance to the case, some appear to describe events that could conceivably constitute predicate acts for the purposes of Plaintiff's RICO claims if properly alleged and which, assuming without deciding that the allegations describe valid predicate acts, may not be time barred.[6] For this reason, it is not apparent that Plaintiff's case could not be saved by amendment, and the Court accordingly grants Plaintiff LEAVE TO AMEND her RICO claim.

---

[6] Some of the predicate acts Plaintiff appears to newly allege in her opposition, supplemental opposition, and reply sound in fraud. When amending her complaint, Plaintiff should be aware that allegations of fraud are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances of the conduct constituting fraud are stated with particularity when they are sufficiently identified "so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). A plaintiff alleging fraud must include "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations and quotation marks omitted). Allegations of fraud should include, at the minimum, "statements of the time, place and nature of the alleged fraudulent activities." *Wool v. Tandem Computers Inc*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 Fed App'x 701, 703 n. 3 (9th Cir. 2002).

## G.    Sherman Act Claims

Plaintiff alleges claims under both § 1 and § 2 of the Sherman Act. ECF No. 16 at 87-89. Because "proceeding to antitrust discovery can be expensive," *Twombly*, 550 U.S. at 558, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556. A court must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id*. at 558. The Court addresses Plaintiff's claims under each section separately.

### 1.    Section 1

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Although this language "by its terms, prohibits every agreement in 'restraint of trade,'" § 1 is interpreted to "outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (citing *Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332, 342-43 (1982)). Whether a practice unreasonably restricts trade in violation of § 1 is normally evaluated under the "rule of reason." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). Some practices, such as horizontal agreements among competitors to fix prices or divide markets, however, are considered per se unlawful. *Id.* at 1197 n. 6 (citing *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988)).

In order to state a § 1 claim, a plaintiff must plead not just "ultimate facts" but also "evidentiary facts" proving "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several State, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988). A plaintiff must also establish an "antitrust injury," or "antitrust standing," by alleging an injury that "is attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Brantley*, 675 F.3d at 1197.

Plaintiff alleges that Santé, managed by Mr. Wells, provides HMO services to more than 150,000

patients in California's Central Valley. ECF No. 16 at ¶ 337. Ms. Fields-Keene is the CEO of CCFMG, which certifies physicians as approved providers under an agreement with Santé. *Id*. UCSF and CRMC are healthcare providers approved by Santé pursuant to a contract. *Id*. Santé, CCFMG, UCSF, and CRMC, working in combination, can control the ability of physicians to treat over 50% of the patient base in the Central Valley by withholding approved provider status, since two HMOs control over 80% of the patients in the Central Valley. *Id*. at ¶ 338. The use of the approved provider system constitutes an unreasonable restraint of trade because of the narrow market for medical services in the Central Valley. *Id*. This unreasonable restraint causes under staffing of physicians and impedes the delivery of medical services and specialty medical practice, which results in the delay and denial of treatment, life-threatening treatment dilemmas, and medical care that is worse than what would be otherwise available. *Id*. at ¶ 339. The inefficient and unreasonable delivery of care impacts patient members of Santé and Medicare/Medicaid patients. *Id*.

Plaintiff has not alleged any evidentiary facts constituting a contract, combination, or conspiracy between Defendants. Instead, she recites only the ultimate fact that Defendants operated in combination. ECF No. 16 at ¶¶ 337-39. Without supporting evidentiary facts, the mere allegation of a combination is not sufficient to state a § 1 claim. Moreover, Plaintiff has not alleged that the combination acted with the intent to harm or restrain trade or commerce. Plaintiff's allegations that Defendants entered into contracts, *id*. at ¶ 337, without additional facts, do not permit the inference that such contracts were intended to unreasonably restrain trade. *See National Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984) ("[E]very contract is a restraint of trade, and as we have repeatedly recognized, the Sherman Act was intended to prohibit only unreasonable restraints of trade"). Finally, Plaintiff does not allege any evidentiary facts supporting her conclusion that "such unreasonable constraints on physician approval" as alleged actually injures competition. *Id*. at ¶ 339. Conclusory pleadings of this nature have been found insufficient in the context of anti-trust actions. *Twombly*, 550 U.S. at 1970. Without sufficient evidentiary facts to "invest . . . the action . . . alleged with a plausible

suggestion of conspiracy," *Id.* at 1971, Plaintiff's §1 claim fails. *See Kendall*, 518 F.3d at 1048.

Additionally, Plaintiff has not alleged any specific, non-time barred anti-trust injury that she has sustained as a result of anti-competitive practices. An anti-trust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). A plaintiff may not assert injuries to third parties, such as patients in the Central Valley, for the purpose of establishing the antitrust standing required to maintain an action for a § 1 violation. Instead, Plaintiff must state how she personally suffered an anti-trust injury as a result of Defendants' anti-competitive practices with a sufficient degree of specificity to allow Defendants to respond to her allegations.

For the foregoing reasons, Plaintiff has not stated a plausible claim under § 1 of the Sherman Act. It is not clearly apparent that amendment would be futile, and for that reason Plaintiff is granted LEAVE TO AMEND her § 1 claim.

## 2. **Section 2**

Section 2 of the Sherman Act, while similar to § 1, prohibits monopolization. 15 U.S.C. § 2. To plead a § 2 claim, a plaintiff must allege three elements: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010) (quoting *Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp.*, 613 F.2d 727, 735 (9th Cir. 1979)). "Monopoly power is the power to control prices or exclude competition." *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 391 (1956). Monopoly power over a market can be demonstrated either by direct evidence, such as evidence of supracompetitive prices or restricted output, or by circumstantial evidence. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997), *overruled on other grounds*, *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). "Section 2 of the Sherman Act proscribes 'monopolization'; it does not render unlawful all monopolies." *Foremost Pro Color, Inc. v. Eastman*

*Kodak Co.*, 703 F.2d 534, 543 (9th Cir. 1983).

Plaintiff incorporates her allegations regarding her § 1 claim, as well as the rest of her FAC, into her § 2 claim. ECF No. 16 at ¶ 340. The "relevant market" identified by Plaintiff is "the Central Valley." *Id.* at ¶ 337. Plaintiff alleges that Santé has an HMO contract with a "large part" of the patients in the Central Valley, and that CCFMG and its CEO Ms. Fields-Keene certifies physicians as approved providers to work with the patients of Santé. *Id.* UCSF and CMC are healthcare providers approved by Santé. *Id.* Plaintiff alleges that three or four contracts exist between those Defendants, and that Defendants acted in combination and pursuant to those contracts to limit the practice of physicians such as Plaintiff and to control the patient base in the Central Valley. *Id.* at 431. The purpose and result of those actions was to destroy and hinder competition from other healthcare providers. *Id.* That conduct was predatory, anti-competitive not in the best interests of patients, intended to keep patients within Defendants' healthcare systems and to deny access to other physicians. *Id.* at 342.

"With certain exceptions for conduct regulated as *per se* illegal because of its unquestionably anticompetitive effects, the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *United States v. United States Gypsum Co.*, 438 U.S. 422, 440-41 (1978). Plaintiff does not identify any conduct that is *per se* illegal, such as price-fixing. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940). The activity she identifies instead falls into the "gray zone," and must be examined under the rule of reason analysis.

Plaintiff has not pled sufficient evidentiary facts to establish for the purposes of a Rule 12(b)(6) motion that Defendants acted to willfully acquire or maintain monopoly power. No facts alleged in the FAC show that Defendants' conduct was "predatory" or "unfair," or that Defendants' conduct "actually monopolizes or threatens to do so." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458-59 (1993). Plaintiff's allegations are wholly conclusory, and not sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 1970. Additionally, and for the same reasons as explained regarding her § 1 claim, Plaintiff

has not pled sufficient specific facts to establish that she has suffered a causal antitrust injury as a result of Defendants' alleged monopoly power.

For the foregoing reasons, Plaintiff has not stated a plausible claim under § 2 of the Sherman Act. It is not clearly apparent that amendment would be futile, and for that reason Plaintiff is granted LEAVE TO AMEND her § 2 claim.

**H.**     **State Law Claims**

Plaintiff's interference with prospective economic advantage and defamation claims are both state law causes of action. *See* ECF No. 16 at ¶¶ 343-55. Since there is not complete diversity of citizenship among the parties, the Court has jurisdiction over this case based solely on the federal question jurisdiction created by Plaintiff's RICO and Sherman Act claims. Plaintiff has failed to state a claim under either statute. A district court may "decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine –judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

It remains unclear at this time whether Plaintiff can allege any viable federal cause of action. If Plaintiff does not do so, the Court anticipates that it will not exercise supplemental jurisdiction over any remaining state law claims. Accordingly, in the interest of efficiency, the Court will defer ruling as to Defendants' Rule 12(b)(6) motion to dismiss the remaining state law claims until Plaintiff has exhausted her opportunity to amend her RICO and Sherman Act claims.

**I.**     **Motions to Strike and for a More Definite Statement**

Since Plaintiff's FAC is dismissed with leave to amend, Defendants' motions in the alternative to strike and for a more definite statement are denied as moot.

# VII. CONCLUSION AND ORDER

For the foregoing reasons:

(1)The Board's motion to dismiss on the ground of Eleventh Amendment immunity is GRANTED WITHOUT LEAVE TO AMEND and the Clerk of Court is directed to TERMINATE the Board as a Defendant; and

(2) Plaintiff's FAC is DISMISSED WITH LEAVE TO AMEND.

Any amended complaint must be filed within 30 days. The amended complaint must comply with Rule 8 by containing a short and plain statement of the grounds for the Court's jurisdiction, a short and plain statement of the claim or claims, and a demand for the relief sought. The amended complaint must clearly and concisely set forth what actions by which Defendant or Defendants give rise to specific claims. The amended complaint should not address matters not directly related to any of Plaintiff's claims. The Court cautions Plaintiff that any excessively long or digressive amended complaint will not meet the Rule 8 standard. Any amended complaint must be in full compliance with the Federal Rules of Civil Procedure, the Local Rules for the Eastern District of California, and this Court's Standing Order. The Court also cautions Plaintiff that any statements of fact not warranted by evidence or not reasonably based on belief may subject her to sanctions under Rule 11.

This Court is one of the busiest in the nation. It is not in the business of writing pleadings for litigants. The Court has done its job by pointing out the law concerning pleadings. It is now Plaintiff's job to *follow* that law. Enough trees have been slaughtered. This will be Plaintiff's final opportunity at pleading.

IT IS SO ORDERED.

Dated:   **April 24, 2018**                    **/s/ Lawrence J. O'Neill**
                                               UNITED STATES CHIEF DISTRICT JUDGE